[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 11 
Decedent died testate in Phoenix, Arizona, on May 10, 1941, survived by his spouse, Elizabeth G. Monaghan, appellant, who was appointed and served as special administratrix. His will was later admitted to probate and the executor, appellee here, was appointed and qualified. All property of established value coming into the possession of the executor was community property of Robert J. and Elizabeth G. Monaghan, his wife. Pursuant to written stipulation, the funeral expenses and separate debts of decedent were paid by the special administratrix. The executor has paid two claims for legal services rendered to the community, in the aggregate sum of $1167.30, and a small claim for medical services to decedent. Other obligations consist of notes secured by mortgages on real property, on all of which amortized payments are current, and which secured obligations are not accelerated by decedent's death. No claims on these were filed with the executor by the holders. Time for filing claims has expired. No unsecured debts remain unpaid. All current assessments and taxes have been paid.
Under an order secured by appellant while she was serving as special administratrix $300 per month has been paid to her as a widow's allowance. The estate was appraised at approximately $45,000. Three appeals heretofore have been taken on questions arising out of this estate, as follows: An appeal on the part of the present appellant from the judgment admitting the will to probate, resulting in an affirmance of the lower court's judgment. Estate of Monaghan, 60 Ariz. 346, 137 P.2d 390; a second appeal on the part of appellant from an order of the probate court holding that certain attorneys' fees due appellant were community property, resulting in a reversal, Estate of Monaghan, 60 Ariz. 342, 137 P.2d 393; an appeal by the executor *Page 12 
and the beneficiaries under the last will and testament of the deceased from an order of the lower court holding certain real property to be community, in which the judgment of the lower court was affirmed; Estate of Monaghan, 60 Ariz. 366,138 P.2d 292.
These various proceedings delayed the administration of the estate and added to the costs and charges of general administration beyond the ordinary charge which would have been incident to the probate of the estate. In October, 1944, the executor filed petition disclosing that he had $7,963.63 cash on hand, and that there were unpaid charges and obligations totaling $8,000, consisting of $2,500 special administratrix's fees, attorney's fees for special administratrix $2,500, fees allowed attorneys for executor $3,000. That no fees had been paid the executor, and additional fees and expenses would be required for closing the estate; that it was necessary to sell the real property or some portion thereof to pay these charges and expenses. Appellant objected to the sale of her one-half interest in the real property on the ground that such interest vested in her at the death of the decedent subject only to community debts which had been paid, and that the personal property, with the rents, issues and profits from real property, were and are adequate to pay any charges which might lawfully be assessed against her or her community interest. She alleged that her vested one-half interest was not subject to the expenses and charges of administration and other expenses, including widow's allowance, and that therefore the property interest of the decedent could be sold without the necessity of selling her interest.
Over these objections, the court directed the sale of the real property as an entity for the payment of the expenses and charges of administration. The property was advertised for sale. Appellant's petition that the order of sale be set aside or modified, on substantially the same grounds set forth in her objections, was denied. She gave supersedeas bond to stay the proceedings and brought this appeal.
Numerous assignments have been presented by the appellant, but the principal and only questions worthy of consideration are those which relate to what items may be charged to the community interest of the wife upon probate of the estate of the deceased husband.
While the law generally requires the representative of a deceased person to inventory and taken possession of all property of the estate, including community property (Sections 38-801,38-803, A.C.A. 1939), it is settled beyond any doubt whatsoever that the survivor's interest in community property is subject to probate only in the event there are community debts. La Tourette v. La Tourette, 15 Ariz. 200, 137 P. 426, Ann.Cas. 1915B, 70; Molina v. Ramirez, 15 Ariz. 249, 138 P. 17; Estate *Page 13 
of Wilson, 19 Ariz. 205, 168 P. 503, wherein it was held that in the absence of a showing of debts, there was no right to administer in probate the community interest of the deceased. At the time of the deaths of the deceaseds in the foregoing cases there was no right of disposition of the community interest by will, as at present. The law was that upon the dissolution of the community by death, all the community estate of the deceased went to the survivor and to the children of the deceased, if any. Par. 2124, sec. 9, R.S. 1901. The law at that time, as now, however, provided in every case the community estate passes charged with the debts against it. Par. 2125, sec. 10, R.S. 1901, sec. 39-109, A.C.A. 1939. By sec. 1100, R.S.A. 1913, the law was changed to give the owners of the community power of testamentary disposition over their respective one-half interests. In Pauley v. Hadlock, 21 Ariz. 340, 188 P. 263, it was held that where the wife died intestate, leaving children, and there were community debts, the probate court had jurisdiction of the whole community estate to determine how much thereof might be sold to satisfy the indebtedness, and to carve out of it a homestead for the surviving husband and children. Perhaps the clearest statement made by the court appears in Roberson v. Teel, 35 Ariz. 166,275 P. 2, 4. It was there said:
"* * * The right of possession given to the executor or administrator by statute is merely for the purpose of enabling him in proper cases to pay the debts and legacies. Where there are none such to be paid, there is no valid reason why he should have possession of the estate."
In Nowland v. Vinyard, 43 Ariz. 27, 29 P.2d 139, 140, involving probate of separate and community property, it was said:
"It seems that when the marital relation is dissolved by death the law casts the duty upon the personal representative of the decedent to attend to the administration of the community property, at least for the purpose of liquidating the community debts. It requires that he make an inventory of and cause to be appraised all of the estate of the decedent, including `the community estate' (section 3958, Rev. Code 1928), and that the inventory show `what portion of the property is community property and what portion is the separate property of the decedent' (section 3960). While it is provided that upon the death of a husband or wife one-half of the community property shall go to the survivor, it `passes charged with the debts against it' (section 985). Community debts are those contracted by the husband during the marriage and the community property is liable for them (section 2175). Since the survivor's one-half interest in the community is assigned or set over to him by operation of law, there is really no necessity for administration of it unless there are debts. We have so held. Estate of Wilson,19 Ariz. 205, 168 P. 503.
"If, however, there are community debts, the most convenient, speedy, and practical *Page 14 
method of clearing the estate is to confer on the personal representative of the decedent the administrative right and power subject to the directions of the probate court, to collect its assets and pay its debts. This is what we think the Legislature intended should be done. The expenses of administering the community property should, then, be borne by the whole community. Any charges against the community not authorized as expenses, or any claim not a community debt or obligation, should not be paid out of the community funds.
* * * * * *
"The wife's one-half interest is as much hers before as after the death of her husband. It is, as before the dissolution, liable for the community debts. It must be understood, therefore, that Joseph Monihon's testamentary disposition of his estate is limited to his separate property and to his one-half of the community."
In that case expense of administering the community property was charged equally against both interests. There were community debts which were paid during the course of administration. The widow died before the estate was closed, and her representative petitioned the probate court for an order directing the executors to turn over to her estate her one-half interest in the community property. The petition was allowed on condition that the widow's representative give a bond for the pro rata payment of expenses and certain other items that had been advanced from the testamentary estate of the deceased. This procedure was approved by the court on the appeal.
No issue was made in the Nowland case that the interest of the survivor, where the whole community was being probated, was not subject to its pro rata share of expenses of administration. The claim of the survivor's representative was merely to the effect that the expenses should be apportioned between the separate and community assets. Appellant here, therefore, takes the position that the statement of the court "The expenses of administering the community property should, then, be borne by the whole community," not being based upon an issuable controversy, is not binding upon us. It is urged that under the terms of the law only the property of the decedent (in this case his community interest) is chargeable with the expenses of administration and the widow's allowance. This argument is based upon the provisions of section 38-1201, A.C.A. 1939, which provides:
"The property of the decedent shall be chargeable with the payment of the debts of the deceased, the expenses of administration and the allowance to the family, except as otherwise provided by law, without priority as between personal and real property and the property may be sold in the manner herein prescribed. * * *."
The provision made for the allowance of the widow is authorized by section *Page 15 38-903, A.C.A. 1939, reading: "If the amount set apart be insufficient for the support of the widow and children, or either, the court shall make such allowance out of the estate as may be necessary for the maintenance of the family," etc. In the preceding sections 38-801, 38-803, 38-901 and 38-902, it clearly appears that the estate consists not only of the separate property of the deceased and the interest of the deceased in the community property, but also the interest of the survivor if such interest is being probated to satisfy community debts. Where, as here, there are debts and the representative is authorized to, and does, take possession of all of the community property, it is obvious that the family or widow's allowance is payable and chargeable pro rata to the respective interests of the deceased and the survivor in the community property since both interests make up the "estate." The provision of section 38-1201, supra, "except as otherwise provided by law," applies and the widow's allowance is chargeable and payable out of the entire community estate in the possession of the representative. If separate estate was also being probated, it would bear its pro rata as a part of the "estate".
Our research and the industry of counsel have failed to produce any decision which passes directly on the situation which we have under consideration. It is our view, however, that what we have said pertaining to the liability of community interests and the separate estate of the deceased, if any, for payment of allowance pro tanto is supported by the following authorities: In re Haselbud's Estate, 26 Cal.App.2d 375, 79 P.2d 443; In re King's Estate, 19 Cal.2d 354, 121 P.2d 716; Id., Cal.App.,113 P.2d 282; Anno. 98 A.L.R. 1325.
Whatever the rule may be elsewhere, we are bound to give effect to the statutes as written. Here the law declares that the widow's allowance shall be made out of the "estate" which, as we have seen, includes the community interest of the widow in case it has to be probated to satisfy debts. It does not exclude this interest from liability. Sec. 38-903, supra
What is the meaning to be given to the term "The property of the decedent" as it appears in section 38-1201? Is it to be considered as equivalent to the term "The property of the estate"? In section 38-801, the representative is required to make "a true inventory and appraisement of all of the estate of the decedent, including money, the homestead and the community estate, if any."
Again, in section 38-803, it is said "* * * the inventory shall contain all the estate of the decedent, real and personal, * * *; the inventory shall show so far as the same can be ascertained by the executor or the administrator, what portion of the property is community property and what portion is the seperate property of the decedent. * * *." *Page 16 
In section 38-809, we find the following: "The executor or administrator is entitled to the possession of all the real and personal property of the decedent, and to receive the rents and profits of the real property until the estate is settled, or until delivered over by order of the court to the heirs or devisees, and he shall keep in repair all houses, buildings and fixtures thereon which are under his control. The heirs or devisees may themselves, or jointly with the executor or administrator, maintain an action for the possession of the real property, or to quiet the title to the same, against any one except the executor or administrator. An action involving the title or right of possession of any real property belonging to the estate of the decedent may be brought by or against the executor or administrator without joining the heirs."
It will be observed that this section deals with the property of the decedent and has no application to the community interest of the survivor. It refers only to such property as may be finally delivered over to heirs or devisees. The survivor of the community is not an heir.
In section 38-903, relating to family allowance, the provision is "the court shall make such allowance out of the estate as may be necessary * * *." Again, in section 38-905, relative to assignment of the estate to the surviving spouse or minor children, when the inventory discloses "that the value of the whole estate, exclusive of the amount of liens and the one-half interest of the surviving spouse in the community property does not exceed the sum of two thousand dollars * * *," the whole estate may be assigned to the surviving spouse, etc. It would appear from the foregoing provisions that the term "the property of the decedent" as used in sec. 38-1201, supra, is not given the same meaning as "the property of the estate."
In section 38-1402, the executor is allowed all necessary expenses in connection with the settlement of the "estate." In section 38-1404, the executor's compensation is based "upon the amount of the whole estate, accounted for by him * * *:" In neither of these sections are the expenses limited on the basis of "the property of the decedent."
In section 38-1214, to obtain an order for sale of real property the representative is required to file a petition giving "a description of all the real property of which the decedent died seized, or in which he had on interest, or in which the estate has acquired an interest, and the condition and value thereof, and whether the same be community or separate property; * * *."
In section 38-1215, relating to orders to appear and show cause in connection with sales of real estate, the following appears: "to show cause why an order should not be granted to the executor or administrator to sell so much of the real property of the decedent as is necessary." No provision appears authorizing the sale of the interest of the survivor as such in community *Page 17 
property. However, section 38-1225, relating to conveyances, contains the following provision: "Conveyances so made convey all the right, title and interest of the decedent in the property at the time of his death, and the right, title or interest of the estate acquired therein after the death of the decedent." Since the personal representative is authorized to take possession of the community interests of the survivor for the payment of debts, the estate acquires an interest in the survivor's one-half to that extent.
Likewise, if under the provisions of section 38-903 a family allowance is made, and the survivor's interest in community property is being probated, the estate further acquires a right, title or interest in the survivor's portion of the community for the pro rata payment of such allowance. Therefore, if there are any unpaid debts or unsatisfied family allowances, the survivor's interest may be sold as interests of the estate acquired after the death of the decedent. Since, however, the expenses of administration are by the statutes chargeable solely to the property of the decedent, a sale of the survivor's interest in the community to satisfy such expenses is not authorized.
It must be understood that in this opinion we are considering only the ordinary and usual expenses of administration, such as probate fees, the usual attorneys' fees and fees payable or allowed to the representative, — these being the only items involved under the order of sale. Whether, under the provisions of section 38-1201, supra, special allowances to attorneys and administrators would be considered as expenses, we do not now decide. We are, however, satisfied that expenses incurred by the representative for carrying on a business formerly belonging to the community, or special fees or charges incurred in collecting the whole of community assets, or in the preservation of such assets, such as repairs, should be borne ratably by the respective interests of the survivor and the deceased.
Does the term "The property of the decedent" cover any title or right in the survivor's community one-half interest? The answer to this is to be found in the character of the interest of the survivor when the community is dissolved by death. Chief Justice Franklin, in his exceedingly able opinion in La Tourette v. La Tourette, supra [15 Ariz. 200, 137 P. 429], considered at length the rights of the husband and wife during the existence of the community, and came to the following conclusion:
"That the interest of the wife in the community property during the coverture is not a mere possibility — not the expectancy of an heir — is quite apparent. The old saying is not true that community is a partnership which begins only at its end. Upon the dissolution of the community by death, the wife does not inherit her share of the common property, but with the death of the husband the management and control *Page 18 
of the statutory agent or trustee ceases. The wife acquires not her share for that was already hers, but in addition to her share she acquires the right of management, control, and disposition of that share. * * *."
This view was followed and applied in Molina v. Ramirez, supra. The conclusion as to the character of the widow's rights to her community interest has been repeatedly approved, followed and never doubted in numerous opinions of this court. Estate of Wilson, supra; Pauley v. Hadlock, supra; Schofield v. Gold,26 Ariz. 296, 225 P. 71, 37 A.L.R. 275; Cosper v. Valley Bank,28 Ariz. 373, 237 P. 175; Forsythe v. Paschal, 34 Ariz. 380,271 P. 865; Nowland v. Vinyard, supra; Coe v. Winchester, 43 Ariz. 500,33 P.2d 286; Oglesby v. Poage, 45 Ariz. 23, 40 P.2d 90; Blackman v. Blackman, 45 Ariz. 374, 43 P.2d 1011; Donn v. Kunz, 52 Ariz. 219,79 P.2d 965; Schwartz v. Durham, 52 Ariz. 256, 80 P.2d 453; Estate of Torrey, 54 Ariz. 369, 95 P.2d 990; Greer v. Goesling,54 Ariz. 488, 97 P.2d 218; Ackel v. Ackel, 57 Ariz. 14,110 P.2d 238, 133 A.L.R. 549.
As shown by the following excerpts from Arizona cases, the doctrine of the La Tourette case has not only been followed but amplified. Thus, in Cosper v. Valley Bank, supra [28 Ariz. 373,237 P. 176], it was said: "The third is that the wife's interest in the community estate is a vested legal one, the same as the interest of any other partner in partnership property, * * *."
In Forsythe v. Paschal, supra [34 Ariz. 380, 271 P. 866], the following appears: "under our law, therefore, the status of marriage is more analogous to that of a partnership than to any other status known."
In Coe v. Winchester, supra [43 Ariz. 500, 33 P.2d 287], it was said: "Under the community law of this state the spouses own their common property and the wife's interest is equal to that of her husband's."
Speaking of the respective rights of the husband and wife to the community, the court states in Oglesby v. Poage [45 Ariz. 23,40 P.2d 93]:
"All that we can say is that it is sui generis, and is a creature of the statute. We have held repeatedly that the interest of the wife is a vested one, in no way dependent on her husband's volition, nor subject to his disposal, except as he may act as agent in the disposal of personal property. (Citing cases). And, necessarily, the husband's interest is equally a vested one. When the marital status, which alone is the band that holds the vested interests together as against third parties, is severed, either by death or divorce, without further action those interests are separated automatically and held, by the former spouses separately in the case of divorce, or by the survivor and the heirs of the other if the dissolution be by death, as tenants in common. *Page 19 
(Citing cases). That these interests are separate for the purpose of taxation is recognized by the federal government when it allows separate returns to be made for the purpose of community income taxes. (Citing cases). And our Legislature has taken the same position. Chapter 8, First Special Session, 1933. If, as contended by appellee, the husband holds his interest in the community per tout et non per my, the Supreme Court of the United States would doubtless have applied the rule of United States v. Robbins, 269 U.S. 315, 46 S.Ct. 148, 70 L.Ed. 285, to Arizona community incomes."
The statement of the court appearing in Greer v. Goesling, supra, clearly discloses that upon death the community estate becomes in effect two separate estates. We quote [54 Ariz. 488,97 P.2d 220]:
"* * * When the community status is dissolved by death, the community estate becomes ipso facto in effect two separate estates, except as to the rights of community creditors. The surviving spouse takes half of the estate, not as a matter of descent but as a matter of right, subject, however, to the community debts. * * *."
The United States Supreme Court, in Goodell v. Koch,282 U.S. 118, 51 S.Ct. 62, 75 L.Ed. 247, stated:
"The Arizona supreme court has likened the community to a partnership. Forsythe v. Paschal, 34 Ariz. 380, 271 P. 865. The husband as agent may not act in fraud of his wife's rights, and if he attempts to do so, she has a remedy in the courts. Gristy v. Hudgens, 23 Ariz. 339, 203 P. 569.
"Enough has been said to show that our conclusion in No. 15 (Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239) holds here, and that the wife has such equal interest in community income as to entitle her to treat one-half thereof as her income, and file a separate return therefor * * *."
The Arizona rule has been followed by the United States courts. In Greenwood v. Comm'r of Internal Revenue, 9 Cir., 134 F.2d 915,918, referring to the Arizona law, the court stated: "Under that law the wife has a present, existing, and equal interest with the husband in the community estate (citing cases), and therefore if, as contended by petitioner, the property was community-owned at the time of decedent's death, only one half could be properly considered in establishing the value of his gross estate for federal estate tax purposes."
The opinion in Bek v. Miller, Nov. 2, 1925, 56 App.D.C. 36,8 F.2d 797, 799, citing the La Tourette and other cases relative to the status of community rights, is illuminating. It was there said: "* * * the community rights of the wife are held to be a present vested one-half interest in the community property. It is held that this right is not derived from her husband, but is acquired by her similarly to the acquisition by the husband of his own half interest." *Page 20 
In Vaccaro v. United States, D.C. 55 F. Supp. 932, affirmed 5 Cir., 149 F.2d 1014, involving the community law of Louisiana, the Arizona rule was followed. The holding was that the wife has a present vested interest in one-half of the community property, not a mere expectancy. She does not take by inheritance but in her own right as owner. On the death of the husband, and in connection with the probate of his estate, no part of the attorneys' fees, commissions of the representative, or other costs of administration, may be charged to the surviving spouse's share of the community. For federal estate tax purposes, all expenses of administration are required to be deducted from the one-half interest of the deceased husband.
The opinion of the U.S. Circuit Court in Bishop v. Comm'r of Internal Revenue, 9 Cir., 152 F.2d 389, 390, is worthy of consideration. The case involved income taxes on income from community property being probated in California. Under the law of that state, all the community property, including the surviving widow's one-half interest, was subject to administration and was being administered by decedent's executrix and executor. The tax court had held that all the community, including the interest of the survivor, had become a part of the decedent's estate, and that the income on both interests was assessable to the estate. We quote from the opinion:
"* * * Petitioner's half of the community property continued to belong to her after decedent's death. * * *
* * * * * *
"The Tax Court appears to have assumed that, upon decedent's death, petitioner's half of the community property ceased to be hers and became a part of decedent's estate. The assumption is incorrect. Petitioner's half, like decedent's half, was subject to administration, but, unlike his half, her half never became a part of his estate."
It appears from the foregoing authorities that there is unanimity of opinion to the effect that the wife's interest in community property is vested, that she does not, when the husband dies, take by virtue of heirship or succession, but merely retains her already vested interest. This being so, it is apparent that the term used in section 38-1201, supra, "The property of the decedent" cannot include the survivor's interest in community property. If, as it appears, the survivor's interest continues in her or him, as the case may be, by no method of reasoning can it be held that the term "The property of the decedent" includes the survivor's interest.
It would also appear to be clear that the husband's right of management is not a property right. Under our law, this right of management is not exclusive. It is subject to many restrictions. The husband cannot sell or dispose of the real property without the joinder of the wife. He *Page 21 
may not dispose of personal property in fraud of the wife, nor encumber it with separate liabilities. When the husband dies, the widow acquires nothing more than she already had or possessed. True, she has the management of her one-half interest untrammeled by any managerial rights of the husband as agent of the community. But this sole right of management, so far as the widow is concerned, is in fact a burden rather than a right or thing of value. Not until the late decision of the United States Supreme Court in Fernandez v. Wiener, 326 U.S. 340, 66 S.Ct. 178, 181,90 L.Ed. 116, has it ever been suggested, under a community law similar to ours, that upon the dissolution of the community by death either of the spouses thereby acquired more valuable rights than their own vested interest in the community property.
The Wiener case dealt with the construction of section 402 of the Revenue Act of 1942, which amended section 811(e) of the Internal Revenue Code, 26 U.S.C.A. Int. Rev. Code, § 811(e). This provision was enacted for the purpose of including in the gross estate of decedent, subject to the estate tax: "(2) Community interests. To the extent of the interest therein held as community property by the decedent and surviving spouse under the law of any State, * * *," with certain exceptions not material here. The case arose under the law of Louisiana which apparently gives the husband control and disposition over both real and personal property of the community. The court held that the widow's interest, as well as that of her deceased husband, was subject to the estate's tax. As against the claim that the widow had a vested interest in the property and did not take either as an heir or by succession, the court justifies its decision upon the theory that upon the death of her husband she became vested with the exclusive possession of her half interest and the right to manage the same. The court said:
"While it may generally be true, as appellees argue, that neither the husband nor wife gains any over-all financial advantage when the other dies, it suffices that the decedent loses and the survivor acquires, with respect to the property taxed, substantial rights of enjoyment and control which may be of value."
It is our view that the decision in the Wiener case has no application in so far as Arizona community property is concerned. Here the husband does not have the exclusive control of the community. He cannot sell the real property without the wife's consent, he is merely the agent of the community, acting for and in behalf of himself and his wife. The wife, during the continuance of the community, is in full possession and enjoyment legally of her half interest in the property, and, for all practical purposes, of the whole interest of the community. Because by virtue of the relationship of the husband and wife she not only may rely upon the income from her own vested half interest but also on *Page 22 
the income from the vested half interest of her husband for her sustenance and support.
When the community is dissolved by death, she actually loses all these rights. She is fully and completely divested of her husband's half interest in the community property She has to take on the onerous management of her own half interest, which has theretofore been managed and handled by her husband. She, as the survivor, therefore, acquires with respect to her own half interest, on the death of her husband, no substantial rights of enjoyment or possession which she did not have in full during his lifetime. It is true she does acquire the complete control of this half interest, but, as we have pointed out, that control is, legally speaking and we presume in most cases, a loss to her and not of any value. There is no actual change in the legal and economic relationship of the property taxed. The situation is wholly unlike that of joint tenants where, upon the death of one, the survivor becomes vested with and takes the complete possession of and interest in the whole property. The opinion of the court cannot be sustained upon any process of logic based upon actual facts and conditions. It is wholly at variance with all former decisions of the court, and certainly should have no application in so far as community property in Arizona is concerned. It is our view that when the community is dissolved by death, the surviving wife acquires nothing of value which she did not theretofore possess.
Where, by reason of existing debts, all the community property must be probated, it would seem equitable to charge the costs and expenses of administration over the entire community. On the other hand, it may well be urged that the vested interest of the survivor should not be subject to costs and expenses of administration since the probate adds nothing to the survivor's title or right of possession. Then, too, ordinarily no more work not services are required in the collection of the whole of a community claim or payment of a whole community debt than if only half such claim or debt was involved. However that may be, the question of how expenses shall be charged is one wholly for the legislature. It has said that the expenses of administration, except where otherwise provided by law, shall be chargeable to the property of the decedent. As we have seen, the property of the decedent cannot and does not include the interest of the survivor in community property.
In the present case, since all of the debts and the widow's allowance had been paid, and the sale ordered was for the satisfaction of expense items, to-wit, the usual attorneys' fees and commissions of the representatives, the court had authority only to direct a sale of the interest of the decedent.
The order of the lower court directing a sale of the entire community property, including *Page 23 
appellant's undivided one-half interest, and the proceedings taken thereunder, are vacated and set aside.
STANFORD, C.J., and LA PRADE, J., concur.